IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
COOKEVILLE DIVISION

| | | |
|---|---|---|
| CRAIG LAMONT THOMPSON, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | Case No. 2:09-cv-0074 |
| v. | ) | Judge Sharp/Brown |
| | ) | |
| JEWEL STEEL, Warden, | ) | |
| | ) | |
| Respondent. | ) | |

To: The Honorable Kevin H. Sharp, District Judge

## REPORT AND RECOMMENDATION

This action was referred to the Magistrate Judge for further proceedings under Rule 8(b), Habeas Corpus Rules, 28 U.S.C. § 636(b)(1)(B), and Rule 72.03, Local Rules of Court. (Docket Entry 50). Currently pending before the Magistrate Judge is Petitioner's Petition for Writ of Habeas Corpus (Docket Entry 1), Petitioner's Motion for Summary Judgment (Docket Entry 23), and Respondent's Motion to Dismiss (Docket Entry 40). The parties have filed Responses to the pending Motions, and Petitioner has filed a Reply in support of the pending Motion for Summary Judgment. (Docket Entries 42, 48, 54). The undersigned has also reviewed the record. (Docket Entries 49, 55). The Magistrate Judge also held an evidentiary hearing on April 10, 2012, to determine whether equitable tolling applies to the Petition in light of Petitioner's mental illness. (Docket Entries 56, 59). Following the hearing, and pursuant to the Magistrate Judge's Order, both parties submitted post-hearing briefs. (Docket Entries 66, 68). For the reasons set forth below, the Magistrate Judge **RECOMMENDS** the Petition be allowed to proceed to its merits. The Magistrate Judge makes no recommendation on the underlying Motions or on the merits of

1

the Petition at this time.

## I. BACKGROUND AND PROCEDURAL HISTORY

The Petitioner is an inmate of the State of Tennessee currently incarcerated at Lois M. DeBerry Special Needs Facility. He brings this action pursuant to 28 U.S.C. § 2254 against Jewel Steel, Warden of the facility, seeking a writ of habeas corpus.

Petitioner initiated this action by filing of a habeas corpus petition on June 18, 2009, claiming his sentence was illegal. (Docket Entry 1). Petitioner's request for counsel was granted. (Docket Entry 9). The case was administratively closed for approximately nine (9) months on Petitioner's motion. (Docket Entries 17, 21). After the case was reopened and the Magistrate Judge reviewed the file, the Magistrate Judge held an evidentiary hearing to determine whether Petitioner's claims are time-barred, as Respondent claims in its Motion to Dismiss.[1] (Docket Entry 60). Following the evidentiary hearing, both parties submitted briefs in response. (Docket Entries 66, 68).

## II. EVIDENTIARY HEARING

At the evidentiary hearing held on April 10, 2012, John Joseph Griffin, M.D., testified on Petitioner's behalf. (Docket Entry 64). Respondent presented no witnesses in rebuttal. Dr. Griffin was qualified as an expert in general psychiatry. *Id.* at p. 6. He reviewed Petitioner's medical records going back to 1992 and formed an opinion on Petitioner's mental status ("Griffin

---

[1] Because Respondent has also argued Petitioner's claims are barred by procedural default, and this Report and Recommendation addresses only the statute of limitations issue, the Magistrate Judge has not recommended a disposition on the Motion to Dismiss.

Report" or "Report").[2] *Id*. at pp. 7-8. The Griffin Report was introduced into evidence and was attached to Petitioner's post-hearing brief at Docket Entry 66-1.

In his Report, Dr. Griffin notes that his opinions "are given within a reasonable degree of medical certainty." (Docket Entry 66-1). He was presented with two questions for his record review. First, "From June 14, 1996 to June 18, 2009, what period of time, if any, was Mr. Thompson mentally incompetent?" *Id*. Dr. Griffin stated that he believed "Mr. Thompson was incompetent during this entire period of time."[3] *Id*. The second question posed to Dr. Griffin was, "For any identified periods of incompetence did that incompetence cause Mr. Thompson's failure to pursue his legal rights?" *Id* In Dr. Griffin's opinion, it was "probable and very likely that Mr. Thompson did not pursue his legal rights during this 13 year period of time because of his psychotic illness and related incompetence." *Id*

Dr. Griffin's testimony expanded on his Report. He noted that Petitioner was being treated with medications that would generally be indicated for psychotic symptoms, including hallucinations, paranoid thinking, delusional thinking, and disorganized thinking. (Docket Entry 64, p. 8). He believed that, by prescribing those medications, "the physicians who were treating him considered him to be out of touch with reality, delusional, psychotic, seriously mentally disturbed." *Id*.

---

[2] When asked why he did not personally examine Petitioner, as is his usual custom, Dr. Griffin that he "was addressing issues from the past and [] had the records," which he felt were adequate bases for his opinions. (Docket Entry 64, p. 31.)

[3] At the time he prepared his Report, Dr. Griffin did not have access to Petitioner's medical records from approximately 2000 until some time in 2003. However, he later reviewed those records and testified that they did not alter his conclusion. (Docket Entry 64, pp. 17-18).

Dr. Griffin noted there were more than 150 separate documents that authorized Petitioner's restraint and/or seclusion, which he attributed to Petitioner's severe psychiatric problems and subsequent inability to understand what was going on or to control his behavior. *Id*. at 8-9. Dr. Griffin also at least one instance in 2000 where prison officials instituted measures against self-harm, particularly suicide. *Id*. at 10.

On March 7, 1996, Petitioner was deemed "not competent to give informed consent." *Id*. at 11. Dr. Griffin defined this as "so confused as to not to be able to understand what other people are trying to say to them; they don't understand the circumstances; they don't understand what's in their best interest; and efforts to communicate with them and explain the situation are futile at that point." *Id*. at 11-12. Similarly, on October 30, 1998, Petitioner was described as "clearly lack[ing] capacity." *Id*. at 13. Dr. Griffin interpreted this as Petitioner being unable to "properly understand his condition and properly consent to what others thought was in his best interest." *Id*.

Dr. Griffin clarified that he did not mean Petitioner was incompetent and psychotic for every moment during the period from 1996 until 2009. *Id*. at 14. Petitioner was transferred to the Special Needs facility for treatment of a "severe psychiatric illness" at least five times. *Id*. at 18. Dr. Griffin believed Petitioner was always psychotic, but "there had to be times when he knew what he was doing and he could make decisions in his best interest[s]." *Id*. at 15. However, he did believe that Petitioner did not have the capacity to "fully understand his circumstances and the options available to him in terms of the legal system" for the full period of time. *Id*.

Dr. Griffin noted that Petitioner was treated with injected medication, which would decrease the severity of his symptoms but would not completely eliminate them. *Id*. at 19. While

4

Dr. Griffin believed it was possible to make someone with a mental illness competent through treatment, he did not believe Petitioner ever attained competency. *Id*. at 24-25. Dr. Griffin noted Petitioner "continued to demonstrate significant disturbance and psychotic symptomatology in spite of numerous efforts to help him with medications, dosage changes, [and] actual medication changes." *Id*. at 27-28. Petitioner never seemed to stabilize. *Id*. at 33-34. Even though he was transferred to the general population from Special Needs several times, Dr. Griffin noted the criteria for transfer probably consisted of "primarily behavioral cooperation with the institutional rules rather than primarily mental health criteria." *Id*. at 40. He cited behaviors such as eating, bathing, and cooperating with medication as possible criteria for moving a mentally ill prisoner back to general population. *Id*. Petitioner's counsel pointed out that Petitioner has remained in Special Needs since 2005. *Id*. at 42.

Dr. Griffin was questioned as to whether Petitioner filing his *pro se* petition in 2009 would change his opinion of Petitioner's mental health. *Id*. at 19-20. Dr. Griffin's opinion was unaltered, because he is too ill to be able to understand and work through his legal options. In other words, "he could understand some of this, and at times he would understand it better than others, and at times he could proceed farther along the path to pursue it than others," but he was unable at any point to "fully or even adequately grasp all of the implications of it." *Id*. at 20. He also reviewed some of the language of the petition and noted the incoherence of some of the sentences. *Id*. at 29-30. He believed the substance of the handwritten paragraphs exhibited signs of mental illness, particularly an inability to logically and clearly express his thoughts. *Id*. Dr. Griffin could not explain why Petitioner finally filed this petition in 2009. *Id*. at 21.

5

Respondent questioned Dr. Griffin about Petitioner's earlier post-conviction petitions in state court. *Id*. at 25-27. Dr. Griffin was not aware of these earlier filings, but it did not change his opinion. *Id*. at 25-26.

When asked by the Magistrate Judge whether Petitioner could be found competent for a total of 12 months of the 13 years he was allegedly incompetent, Dr. Griffin believed he was not. *Id*. at 33-34. He stated that it was "really hard to see where [Petitioner] could comprehend this situation, understand what his options were, and proceed in an adequately cooperate and understanding way to make it happen." *Id*. at 34. In Dr. Griffin's opinion, Petitioner "had the ability to cooperate, but he never had the competency required to understand what was going on, what his options were." *Id*. at 37.

### III. ANALYSIS

The sole issue for purposes of this Report and Recommendation is whether equitable tolling applies to the Petition. Petitioner's state court conviction became final on June 14, 1996. For purposes of the one-year limitations period under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"),[4] Petitioner was required to file his federal habeas petition no later than June 14, 1997, one year after the conviction was final. *See* 28 U.S.C. § 2244(d)(1)(A). Petitioner filed his Petition on June 18, 2009. (Docket Entry 1). Petitioner was not entitled to tolling under 28 U.S.C. § 2244(d)(2), because his state post-conviction application was untimely and therefore not "properly filed." (Docket Entry 41-5).

---

[4] This statute became effective on April 24, 1996, before Petitioner's state court conviction became final.

Petitioner argues that he is entitled to the benefit of equitable tolling for his 12-year delay in filing the Petition, as he was mentally incapacitated during the entirety of that time. Equitable tolling is available under AEDPA. *See Holland v. Florida*, 130 S.Ct. 2549, 2562 (2010). In order to qualify for equitable tolling, Petitioner must satisfy a two-prong test and show "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." *Id.* (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)). While the Sixth Circuit has not explicitly tolled the statute of limitations in a habeas petition based on mental incapacity, it has favorably expressed the idea in dicta. *See Robertson v. Simpson*, 624 F.3d 781, 785 (6th Cir. 2010). It is undisputed that Petitioner bears the burden to satisfy the equitable tolling tests. *See id.* at 783-84 (citing *Bolarinwa v. Williams*, 593 F.3d 226, 232 (2d Cir. 2010)). Petitioner must therefore "demonstrate that [his] particular disability constituted an 'extraordinary circumstance' severely impairing [his] ability to comply with the filing deadline, despite [his] diligent efforts to do so." *Bolarinwa* 593 F.3d at 232. The Magistrate Judge believes Petitioner has done so.

The Magistrate Judge found Dr. Griffin's testimony highly credible. Dr. Griffin spoke in detail regarding the entries in Petitioner's medical records that led him to the conclusion Petitioner was mentally ill and incapacitated during the entirety of the relevant period. He could not piece together a total time of 12 months during which Petitioner had the capacity to file a habeas corpus petition. Dr. Griffin's opinion did not change when faced with Petitioner's earlier state court filings or the petition here, as he believed Petitioner did not have the capacity to "fully understand his circumstances and the options available to him in terms of the legal system" for the entire relevant period. (Docket Entry 64, p. 15). Petitioner's repeated

7

admittances to DeBerry Special Needs Facility and need for injected medication and self-harm prevention also support Dr. Griffin's conclusions.

While Respondent does not have the burden of establishing Petitioner is *not* entitled to equitable tolling, Respondent offered no rebuttal evidence.[5] Because the Magistrate Judge believed Dr. Griffin's testimony to be credible, the Magistrate Judge believes Petitioner has satisfied his burden of proving he was unable to comply with the timely filing of the petition due to mental illness and despite his diligent efforts to do so and his therefore entitled to equitable tolling of the statute of limitations.

## IV. CONCLUSION

For the foregoing reasons, the Magistrate Judge **RECOMMENDS** that the Petition be deemed timely and allowed to proceed to its merits. The Magistrate Judge makes no recommendation on the underlying Motions or on the merits of the Petition at this time.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14) days from receipt of this Report and Recommendation within which to file with the District Court any written objections to the proposed findings and recommendations made herein. Any party opposing shall have fourteen (14) days from receipt of any objections filed regarding this Report within which to file a response to said objections. Failure to file specific objections within fourteen (14) days of receipt of this Report and Recommendation may constitute a waiver

---

[5] Respondent offered no testimony, for example, from mental health professionals treating Petitioner while incarcerated. Respondent offered no evidence that Petitioner had capacity for a total of 12 months of this period other than Petitioner's filings with state court and with this court. The Magistrate Judge believed Dr. Griffin's testimony on this point, that Petitioner may have had moments of clarity but was, for the vast majority of the 12 years in question, without capacity.

8

of further appeal of this Recommendation. *Thomas v. Arn*, 474 U.S. 140, *reh'g denied*, 474 U.S. 1111 (1986).

Entered this 14th day of August, 2012.


/S/ Joe B. Brown
JOE B. BROWN
United States Magistrate Judge